UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

No. 09 CR 62 (CM)

-v-

JOHN D'AMICO, et al.,

Defendants.

------------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
JOSEPH WATTS' PRETRIAL MOTIONS

GERALD L. SHARGEL
570 Lexington Ave. Fl. 45
New York, NY 10012
(212) 446-2323
gshargel@shargellaw.com

MARC FERNICH, ESQ.
LAW OFFICE OF MARC FERNICH
152 W. 57th St. Fl. 24
New York, NY 10019
(212) 446-2346
maf@fernichlaw.com

JOEL WINOGRAD, ESQ.
WINOGRAD & WINOGRAD, P.C.
450 Seventh Ave. Fl. 13
New York, NY 10123
(212) 268-6900
joelwinograd@gmail.com

Attorneys for Joseph Watts

## TABLE OF CONTENTS

Table of Contents……………………………………………………………….. i

Table of Authorities……………………………………………………………... ii

Statement……………………………………………………………………….. 1

Argument………………………………………………………………………. 1

**POINT I:**  **COUNT TWO MUST BE DISMISSED AS TIME-BARRED**……………………………………………………. 1

    A.  Statement……………………………………………………… 1

    B.  The Indictment does not charge Capital Murder………………………… 2

    C.  Count two is not "punishable by death" under the phrase's plain meaning………………………………………………………….. 4

    D.  Contrary Authority from other Circuits is unpersuasive………………… 8

        1.  The Sister Circuit Cases are at odds with Second Circuit Law…….. 9

        2.  The Sister Circuit Cases are wrongly decided……………………..... 11

    E.  Conclusion…………………………………………………… 17

**POINT II:**  **COUNT TWO IS BARRED BY DOUBLE JEOPARDY AND ITS *RES JUDICATA* COMPONENT**………………………………….….. 17

**POINT III:**  **COUNT TWO IS BARRED BY WATTS' 1996 PLEA AGREEMENT**…………………………………………………….. 23

**POINT IV:**  **THE GOVERNMENT IS ESTOPPED FROM CLAIMING THAT WATTS MURDERED WEISS OR AIDED AND ABETTED THE CRIME**……………………………………………………….…. 26

Conclusion………………………...……………………………………………. 30

## TABLE OF AUTHORITIES

## CASES

*Apprendi v. New Jersey*, 530 U.S. 446 (2000)……………………………………… 12, 14, 15

*Blakely v. Washington*, 542 U.S. 296 (2004)…………………………………… 15

*Bradshaw v. Stumpf*, 545 U.S. 175 (2005)…………………………………… 28, 29

*Brady v. Maryland*, 373 U.S. 83 (1963)………………………………… 24

*Brown v. Ohio*, 432 U.S. 161 (1977)…………………………………….... 20

*Corley v. United States*, __S. Ct. __, 2009 WL 901513 (April 6, 2009)…………. 16

*Delaware LLC v. Schahin Engenharia Limitada*, 543 F.3d 104 (2d Cir. 2008)…. 11

*EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621 (2d Cir. 2007)………………………………………………………………………….…………. 23

*Enter. Mte. Acceptance co., LLC, Sec. Lit v. Enter. Mtge. Acceptance Co.,* 391 F.3d 401 (2d Cir. 2004)…………………………………………………….................. 13

*Federated Dep't Stores, Inc. v. Moittie*, 452 U.S. 394 (1981)…………………… 22

*Fransaw v. Lynaugh*, 810 F.2d 527 (5th Cir. 1987)………………………...…. 21

*Furman v. Georgia*, 408 U.S. 238 (1972)…………………………………….. 4, 5, 8, 9, 10, 12, 14, 16

*Hu Yau-Leng v. United States,* 649 F.2d 914 (2d Cir. 1981)……………………. 12

*Illinois v. Vitale,* 447 U.S. 410………………………………………………. 20

*In re Altro*, 180 F.3d 372 (2d Cir. 1999)…………………………………… 25

*In re Mills*, 135 U.S. 263 (1890)………………………………………… 4, 5

*In re Teltronics*, 762 F.2d 185 (2d Cir. 1985)……………………………… 22

*Jacobs v. Scott*, 516 U.S. 1067 (1995)…………………………………… 27

*Kennedy v. Louisiana*, 128 S. Ct. 2641 (2008)……………………………… 12

*Lewis v. United States*, 518 U.S. 322 (1996)………………………………....   12

*Lopez v. Gonzales*, 549 U.S. 47 (2006)……………………………………...   6

*Morris v. Reynolds*, 264 F.3d 38 (2d Cir. 2001)…………………………….   20, 21

*Nichols v. Scott*, 69 F.3d 1255 (5th Cir. 1999)……………………………...   27

*Ohio v. Johnson*, 467 U.S. 493 (1984)………………………………………   20

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001)………………………………..   22

*Puckett v. United States,* 129 S. Ct. 1423 (2009)……………………………   25

*Santobello v. New York*, 404 U.S. 257 (1971)……………………………….   25

*Sealfon v. United States*, 332 U.S. 575 (1948)………………………………   20, 22

*Serfass v. United States*, 420 U.S. 377 (1975)………………………………   21

*Stern v. Shalala*, 14 F.3d 148 (2d Cir. 1994)………………………………...   24, 25

*Stogner v. California*, 539 U.S. 607 (2003)…………………………………..   13, 14, 16

*Stumpf v. Mitchell*, 267 F.3d 594 (6th Cir. 2004)…………………………...   28

*Thompson v. Calderone*, 120 F.3d 1045 (9th Cir. 1997)……………………   28

*United States v. Alfonso,* 143 F.3d 772 (2d Cir. 1998)……………………...   29

*United States v. Aliotta*, 199 F.3d 78 (2d Cir. 1999)………………………...   22

*United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998)…………………….   24

*United States v. Bailin*, 977 F.2d 270 (7th Cir. 1992)………………………   21

*United States v. Booker*, 543 U.S. 220 (2005)………………………………   15

*United States v. Boone*, 245 F.3d 352 (4th Cir. 2001)………………………   7, 9, 10, 14

*United States v. Boyle*, No. 05-4239-cr, 283 Fed. Appx. 825, 2007 WL 4102738
(2d Cir. Nov. 19, 2007)………………………………………………………   27

*United States v. Castellano*, 610 F. Supp. 1359 (S.D.N.Y. 1985)……………...   29, 30

*United States v. Church*, 151 F. Supp. 2d 715 (W.D.Va 2001)……...…………   4, 13

*United States v. Coon,* 360 F.2d 550 (8th Cir. 1966)…………………………….. 2, 5, 6

*United States v. Cotton*, 535 U.S. 625 (2002)………………………………………. 2, 4

*United States v. Dahlstrum*, 655 F.2d 971 (9th Cir. 1981)……………………….. 21

*United States v. Davidson*, No. 92-CR-35, 1992 WL 165825 (N.D.N.Y. July 10, 1992)………………………………………………………………………………………. 9

*United States v. Denson*, 588 F.2d 1112 (5th Cir. 1979), *mandamus granted*, 603 F.2d 1143 (5th Cir. 1979)…………………………………………………………………. 4, 5

*United States v. Dionisio,* 415 F. Supp. 2d 191 (E.D.N.Y. 2006), *aff'd* 503 F.3d 78……………………………………………………………………………………………... 21

*United States v. Dionisio,* 503 F.3d 78 (2d Cir. 2007)………………………………. 21

*United States v. Douglas*, 525 F.3d 225 (2d Cir. 2008)…………………………….. 6, 7, 9, 10, 11

*United States v. Dowling*, 473 U.S. 207 (1985), *aff'd,* 503 U.S. 291 (1992)……... 7

*United States v. Ealy, 363 F.3d 292 (4th Cir. 2004)*………………………………… 4, 8, 9, 14

*United States v. Edmund Boyle, et al.,* S1 08 Cr. 523 (CM)(S.D.N.Y.)…………... 3

*United States v. Edwards*, 159 F.3d 1117 (8th Cir. 1998)………………………....... 2, 8, 9, 13

*United States v. Emery*, 186 F.3d 921 (8th Cir. 1999)……………………………….. 3, 8

*United States v. Estrada*, 320 F.3d 173 (2d Cir. 2002)……………………………... 19

*United States v. Fassoulis*, 445 F.2d 13 (2d Cir. 1971)…………………………….. 22

*United States v. Fontanez*, 869 F.2d 180 (2d Cir. 1989)…………………………... 19

*United States v. Frederico Giovanelli, et al.,* 01 CR 749 (JSR)…………………... 26

*United States v. Giovanni Riggi, et al.,* 00 CR 1118 (MBM)……………………….. 26

*United States v. Gotti*, 457 F. Supp. 2d 411 (S.D.N.Y. 2006)…………………..….. 24, 25, 27, 29

*United States v. Guy*, 47 F.3d 425 (5th Cir. Jan. 26, 1995)……………………….. 5

*United States v. Hunter*, No. 05-CR-188 (JG), 2008 WL 268065 (E.D.N.Y. Jan. 31, 2008)……………………………………………………………………………………... 2, 11, 12

*United States v. Iannelli*, 420 U.S. 770 (1975)…………………………………... 20

*United States v. John Gotti, et al.,* 04 CR 690 (SAS)……………………………… 26

*United States v. Johnson,* 239 F. Supp. 897 (N.D. Iowa 2002), *reconsideration denied*, 270 F. Supp. 2d 1060 (N.D. Iowa 2003)…………………………………… 2, 3

*United States v. Joseph Watts*, 93 CR 294 (S-2) (CPS) (E.D.N.Y.)……………… 17

*United States v. Kennedy,* 618 F.2d 557 (9th Cir. 1980)………………………… 9

*United States v. Kostadinov*, 721 F.2d 411 (2d Cir. 1983)………………………… 10, 11

*United States v. Kozeny*, 541 F.3d 166 (2d Cir. 2008)…………………………… 5, 8, 16

*United States v. LaBonte*, 520 U.S. 751 (1997)………………………………….... 5, 15

*United States v. Loscalzo*, 18 F.3d 374 (7th Cir. 1994)…………………………… 20

*United States v. Manning*, 56 F.3d 1188 (9th Cir. 1995)…………………………… 8, 9, 13

*United States v. Martinez*, 505 F. Supp. 2d 1024 (D. N.M. Feb. 16, 2007)…………….................................................................................... 7, 14

*United States v. Medina*, 32 F.3d 40 (2d Cir. 1994)……………………………… 27

*United States v. Megna*, 450 F.2d 511 (5th Cir. 1971)…………………………… 20

*United States v. Mennuti*, 639 F.2d 107 (2d Cir. 1981)…………………………… 29

*United States v. Mucciante*, 21 F.3d 1228 (2d Cir. 1994)………………………… 20

*United States v. Nachamie*, 101 F. Supp. 2d 134 (S.D.N.Y. 2000)……………… 29

*United States v. Nusraty*, 876 F.2d 759 (2d Cir. 1989)…………………………… 27

*United States v. Olmeda*, 461 F.3d 271 (2d Cir. 2006)…………………………… 19, 25

*United States v. Oppenheimer*, 242 U.S. 85 (1916)……………………………… 14

*United States v. Parker*, 19 F. Supp. 450 (D.N.J. 1937), *aff'd*, 103 F.2d 857 (3d Cir. 1939)……………………………………………………………………………… 3,4, 5

*United States v. Parrino,* 180 F.2d 613 (2d Cir. 1950)................................ 4, 11, 16

*United States v. Peloquin*, 810 F.2d 911 (9th Cir. 1987)............................. 6

*United States v. Pepin Tavares*, 401 F. Supp. 2d 304 (E.D.N.Y. 2005)............. 3,4

*United States v. Peter Gotti, et al.,* 02 CR 743 (RCC)................................ 26

*United States v. Petrucelli*, 97 Fed. Appx. 335 (2d Cir. May 12, 2004)............. 4, 8, 9, 11

*United States v. Pipola,* 83 F.3d 556 (2d Cir. 1996)................................... 26, 27

*United States v. Poddle,* 105 F.3d 813 (2d. Cir. 1997)............................... 6, 14, 19, 21

*United States v. Pope*, No. (SC) 94 CR 631 (JSM), 2003 WL 21271915
(S.D.N.Y. May 30, 2003), *aff'd*, No. 03-1523, 124 Fed. Appx. 680 (2d Cir.
March 2, 2005)......................................................................... 6

*United States v. Provenzano*, 423 F. Supp. 662 (S.D.N.Y. 1976) .................. 2, 8, 9, 11

*United States v. R.L.C.,* 503 U.S. 291 (1992)......................................... 5, 15

*United States v. R.L.C.*, 915 F.2d 320 (8th Cir. 1990)............................... 7, 15

*United States v. Ready*, 82 F.3d 551 (2d Cir. 1996)................................. 25

*United States v. Rodriguez*, 128 S. Ct. 1783 (2008)................................. 5, 15

*United States v. Sabatino*, 943 F.2d 94 (1st Cir. 1991)............................. 20

*United States v. Safarini*, 257 F. Supp. 2d 191 (D.D.C. 2003)...................... 4

*United States v. Santos*, 128 S. Ct. 2020 (2008) .................................... 7

*United States v. Sewell*, 252 F.3d 647 (2d Cir. 2001)................................ 22, 24

*United States v. Shepherd*, 576 F.2d 719 (7th Cir. 1978)........................... 9, 10, 13

*United States v. Smith*, 360 U.S. 1 (1959)............................................ 7, 27, 28, 29

*United States v. Urso*, 369 F. Supp. 2d 254 (E.D.N.Y. 2005)...................... 27

*United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973)............................ 9, 10

*United States v. Woodbine*, No. 02 CR 150 (LAP), 2003 WL 1212972 (S.D.N.Y. March 17, 2003)............................................................... 29

*Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886 (2d Cir. 1995)....... 13

*Virella v. United States*, 750 F. Supp. 111 (S.D.N.Y. 1990)...................... 20

*Wade v. United States*, 504 U.S. 181 (1992)................................ 24

*Wight v. Bankamerica Corp.*, 219 F.3d 79 (2d Cir. 2000)..................... 30

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I § 9, Cl. 3............................................... 4

## STATUTES AND RULES

18 U.S.C. § 1111............................................................ 2, 3, 9

18 U.S.C. § 1111(a)......................................................... 3

18 U.S.C. § 1201............................................................ 8

18 U.S.C. § 1512............................................................ 2, 3, 8, 11, 20, 22

18 U.S.C. § 1512(a)(1)...................................................... 2, 3, 18

18 U.S.C. § 1512(a)(2) ..................................................... 2, 18

18 U.S.C. § 1959............................................................ 8

18 U.S.C. § 1959(a)(5) ..................................................... 18

18 U.S.C. § 3005............................................................ 7, 9, 10, 13

18 U.S.C. § 3142(f)(1)(B) .................................................. 15

18 U.S.C. § 3148…………………………..……………………..……………………...   10, 13

18 U.S.C. § 3281…………………………………………..…..…………………………   *passim.*

18 U.S.C. § 3282……………………………………………..…..……………………...   1, 3,6, 7,
                                                                            8, 17

18 U.S.C. § 3432…………………………………………..……………………...   13

18 U.S.C. § 3553(a)(2)(A) ……………………………..…………………………...   12

18 U.S.C. § 3559(a) ……………………………………..…..………………………...   15

18 U.S.C. § 3559(b) ……………………………………..…..………………………...   15

18 U.S.C. § 921(20) ……………………………………..…………………………...   6

18 U.S.C. § 924(e)(2)(A) ……………………..…..………………………...   12

18 U.S.C. § 924(e)(2)(B) ……………………..…………………………...   12

28 U.S.C. § 994(h) …………………………………………..…………………………...   15

Fed. R. Crim. P. 12(b)(3) ……………………………………..…………………………...   4

Fed. R. Crim. P. 12(e) ……………………………………………..………………………...   4

Fed. R. Crim. P. 24……………………………………………..…………………………...   13

Fed. R. Crim. P. 7(a)(1)(A) ……………………………..………………………………...   6

Fed. R. Crim. P. 7(d) ……………………………………..…..………………………...   20

Fed. R. Evid. 609(a) ……………………………………..…..………………………...   12

Federal Death Penalty Act, 18 U.S.C. §§3591-98…………………………………   4

New York Penal Law § 105.15……………………..…………………………...   17, 18

New York Penal Law § 125.25……………………..…..………………………...   17, 18

U.S.S.G. § 1B1.9, cmt. n. 1…………………..…………………..……………...   15

U.S.S.G. § 2K2.1, cmt. n. 5………………..…………………………...   16

U.S.S.G. § 4B1.1, cmt. n. 2……………………….……………………………   15

U.S.S.G. § 4B1.2, cmt. n. 2……………………….……………………………   16

U.S.S.G. § 4B1.2(a) ……………………….……………………….……………   12

## SECONDARY SOURCES

John S. Baker, Jr., *Revisiting the Explosive Growth of Federal Crimes*, 26
Heritage Foundation Legal Memorandum 1 (June 16, 2008)…………………...   21

Black's Law Dictionary (Rev. 4th ed. 1968)………………………………………   5

Webster's Third Intl. Dictionary (16th ed. 1971)…………………………………   5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA

      -v-                                                                 09 Cr. 62 (CM)

JOHN D'AMICO, *et al.*,

                        *Defendants*.
----------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF
## DEFENDANT JOSEPH WATTS' PRETRIAL MOTIONS

### STATEMENT

Joseph Watts moves to dismiss his 2009 indictment for a 1989 murder charge previously prosecuted and dismissed, in substantially identical form, by midtrial plea agreement in Brooklyn federal court.  As we will show, the charge is barred by the statute of limitations and double jeopardy.  It also violates the earlier plea agreement.  And the government, fully proffering its evidence, has affirmatively attributed the murder to others before different judges and juries in this very courthouse.  For these reasons, amplified below, the government's attempt to raise the charge from the dead and prosecute Watts for it anew cannot proceed.  Additional facts are discussed as relevant to our legal arguments.

### ARGUMENT

### POINT I

### COUNT TWO MUST BE DISMISSED AS TIME-BARRED

**A.**    **STATEMENT**

In general, crimes "not capital" are subject to a five-year limitations period, 18 U.S.C. § 3282(a), while capital offenses – those "punishable by death" – have no statute of limitations and

may be prosecuted "at any time." *Id.* § 3281; *United States v. Edwards*, 159 F.3d 1117, 1128 (8th Cir. 1998); *United States v. Provenzano*, 423 F. Supp. 662, 664 (S.D.N.Y. 1976). Count Two of the indictment, charging Watts with murdering and aiding and abetting the 1989 murder of Frederick Weiss, 18 U.S.C. §§ 1512(a)(1) and 2, does *not* allege a capital offense and is barred by the five-year default statute.

**B.    THE INDICTMENT DOES NOT CHARGE CAPITAL MURDER**

In federal prosecutions, any fact other than a prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum" must be "charged in the indictment." *United States v. Cotton*, 535 U.S. 625, 627 (2002) (citations and internal quotes omitted). This includes penalty-related facts affecting the applicable limitations period. *See, e.g., United States v. Hunter*, No. 05-CR-188 (JG), 2008 WL 268065, at *4 (E.D.N.Y. Jan. 31, 2008) (indictment "contents" determine whether offense "punishable by death" for limitations purposes); *United States v. Coon*, 360 F.2d 550, 554-55 (8th Cir. 1966) (holding that courts must "look to the charge as laid in the indictment in determining whether the offense ... is punishable by death within the meaning of the no-limitations statute").

As noted, Count Two charges Watts with obstruction of justice murder under 18 U.S.C. § 1512. At all relevant times – both now and when Weiss was allegedly slain in 1989[1] – § 1512 punished "killing[s]" as "provided in [18 U.S.C. §] 1111...." In turn, § 1111 authorized[2] and authorizes maximum sentences of death and life imprisonment for first- and second-degree murder,

---

[1]     *See United States v. Johnson*, 239 F. Supp. 2d 897, 902-03 (N.D. Iowa 2002), *reconsideration denied*, 270 F. Supp. 2d 1060 (N.D. Iowa 2003).

[2]     *Id.*

respectively. Thus, "a killing under § 1512(a)(1) meeting the definition of murder *in the first degree* under § 1111 was [and is] punishable by death," while "such a killing meeting only the definition of murder *in the second degree* was [and is] *not*." *Johnson*, 239 F. Supp. 2d at 902-03 (citations omitted).

Here, Count Two fails to allege the elements of first-degree murder as defined in § 1111 – "specifically, that [Weiss's] killing was willful, deliberate, malicious, with premeditation and malice aforethought." *Id.*; *compare D'Amico* indictment ¶ 15 *with, e.g.,* indictment ¶ 15 in *United States v. Edmund Boyle, et al.,* S1 08 Cr. 523 (CM) (S.D.N.Y.) ("the defendants, with malice aforethought, willfully, deliberately, maliciously and with premeditation killed and aided and abetted the killing of [victim]" in violation of § 1512) *and United States v. Pepin Tavares*, 401 F. Supp. 2d 304, 305 (E.D.N.Y. 2005) ("defendant, with malice aforethought, did unlawfully kill [victim] willfully, deliberately, maliciously and with premeditation").

Without these essential elements, Count Two charges only second-degree murder,[3] a non-capital offense subject to § 3282's five-year limitations statute. Since the indictment was brought almost 20 years after the charged crime, it follows that Count Two is time-barred on its face and must be dismissed on this ground alone. *See Johnson*, 239 F. Supp. 2d at 904-05 (§ 1512 counts "punishable by death," and thus timely under § 3281, so long as indictment includes all "elements of first-degree murder"); *United States v. Emery*, 186 F.3d 921, 924 (8th Cir. 1999) (defendant indicted for "capital crime, to which no statute of limitations applies," where § 1512 count "included all [§ 1111] elements of first-degree murder"); *cf. United States v. Parker*, 19 F. Supp. 450, 455-56 (D. N.J. 1937) (charged offense not "punishable with death" where, as here, indictment omits factual

---

[3]     *See* 18 U.S.C. § 1111(a) ("Any other murder is murder in the second degree.").

3

requisites for death penalty's imposition) (citation and internal quotes omitted), *aff'd,* 103 F.2d 857

(3d Cir. 1939); *United States v. Petrucelli*, No. 03-1100, 97 Fed. Appx. 355, 359-60, 2004 WL

1088780, at **3-**4 (2d Cir. May 12, 2004) (unpublished) (rejecting, under strict plain error test of

*Cotton* and Fed. R. Crim. P. 12(b)(3) and (e), unpreserved claim that prosecution "time-barred" by

"applicable five-year [limitations] statute" because "indictment did not allege capital murder").

## C.    COUNT TWO IS NOT "PUNISHABLE BY DEATH" UNDER THE PHRASE'S PLAIN MEANING

Even if it did charge first-degree murder, Count Two would still be untimely because the

death penalty was constitutionally prohibited when the 1989 homicide allegedly occurred. *See*

*Furman v. Georgia*, 408 U.S. 238 (1972).  As a result, capital punishment could not be imposed in

this case – or for any federal crime committed between the 1972 *Furman* decision and 1994's

Federal Death Penalty Act, 18 U.S.C. §§ 3591-98 (FDPA) – without violating the *Ex Post Facto*

Clause, U.S. Const. Art. I, § 9, Cl. 3.  *See, e.g., United States v. Church*, 151 F. Supp. 2d 715, 717-21

(W.D. Va. 2001), *aff'd, United States v. Ealy*, 363 F.3d 292 (4th Cir. 2004); *United States v. Safarini*,

257 F. Supp. 2d 191, 202-03 (D. D.C. 2003); *cf. Pepin Tavares*, 401 F. Supp. 2d at 304-07.  Put

another way, juries have no discretion to impose death sentences in that finite class of cases –

including this one – even if the government seeks them; execution in these circumstances is legally

impossible and categorically foreclosed. *See United States v. Parrino*, 180 F.2d 613, 615 & n.4 (2d

Cir. 1950) (L. Hand, J.) (for offense to be "'punishable by death'" under § 3281, death penalty must

be an option within sentencer's "discretion"); *United States v. Denson*, 588 F.2d 1112, 1120-21 (5th

Cir.) ("punishable" refers to sanction that court has "discretion" to impose) (quoting *In re Mills*, 135

U.S. 263, 268 (1890)) (internal quotation marks omitted), *mandamus granted*, 603 F.2d 1143 (5th Cir. 1979) (*en banc*).

In plain English, then, Count Two is "[in]capable of being punished"[4] by death – by "law"[5] or otherwise – and thus not "possibly punishable" by death as used in § 3281. *Parker*, 19 F. Supp. at 456 (citations omitted). That is, it does not allege an offense for which death "could be imposed" as a sentence "under ... law." *Denson*, 588 F.2d at 1116, 1120 (citations omitted). This is especially true because "law" subsumes not just the charging statutes that nominally kept the death penalty on the books in 1989, but the entire body of judge-made "law" – including *Furman* – that effectively abolished it. *Cf., e.g., United States v. Rodriquez*, 128 S. Ct. 1783, 1790, 1793 (2008) (statutory phrase "maximum term of imprisonment ... prescribed by law" refers to all applicable statutes bearing on sentence, not just statute describing offense and punishment range); *United States v. LaBonte*, 520 U.S. 751, 758 n.4 (1997) (same with respect to statutory phrase "maximum term authorized"); *United States v. R.L.C.*, 503 U.S. 291, 298 (1992) (*R.L.C. II*) (similar).

When statutory language is clear and unambiguous – and the meaning of "punishable by death" in § 3281 is "so self-evident that it hardly admits of argument" – "there is no room for construction," *Denson*, 588 F.2d at 1116-17 (citations and internal quotes omitted), and judicial inquiry is at an end. *See generally, e.g., United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (collecting cases on plain meaning canon of statutory construction). That maxim controls here, as

---

[4]     *United States v. Guy*, No. 94-30107, 47 F.3d 425, 1995 WL 71250, at *1 (5th Cir. Jan. 26, 1995) (*per curiam*) (unpublished) ("'Punishable' means capable of being punished.") (citation omitted).

[5]     *Denson*, 588 F.2d at 1116 ("punishable" means "capable of being punished by law") (citing, among other sources, Webster's Third Intl. Dictionary (16th ed. 1971) and Black's Law Dictionary (Rev. 4th ed. 1968)); *accord Coon*, 360 F.2d at 554 n.7 (same) (quoting Webster's).

Congress could certainly alter the dictionary definition of punishable if it wanted to do so. *See, e.g.,* 18 U.S.C. § 921(20) (excluding specified "offenses" from "term 'crime punishable by imprisonment for a term exceeding one year'").

Thus, because it is not "punishable by death" as commonly understood – that is, it is literally "[in]capable of [such] punishment"[6] in language, fact and law – Count Two is a non-capital charge, barred by § 3282's five-year limitations statute. *Cf. United States v. Pope*, No. (S3) 94 CR 631 (JSM), 2003 WL 21271915, at *1 (S.D.N.Y. May 30, 2003) (no violation of indictment requirement for crimes punishable by death, Fed. R. Crim. P. (7)(a)(1)(A), where defendant "could not be subjected to the death penalty" under *ex post facto* proscription), *aff'd*, No. 03-1523, 124 Fed. Appx. 680, 682, 2005 WL 481662, at **2 (2d Cir. March 2, 2005) (unpublished).

Where, as here, the death penalty is categorically unavailable for a discrete class of crimes – *i.e.*, when it simply cannot be imposed under any conceivable circumstance – a crime within the class is "punishable by death" in name alone. *Cf. Coon*, 360 F.2d at 554 ("clear and ordinary meaning" of "punishable by death" is an offense for which "the death penalty may be imposed"). Any other interpretation exalts form over substance, denying reality and promoting a legal fiction. As the Second Circuit instructs, "courts should leave to Congress the task of defining exceptions" to the limitations statutes' "plain language" – "whatever the 'policy reasons.'" *United States v. Podde*, 105 F.3d 813, 820 (2d Cir. 1997) (quoting *United States v. Peloquin*, 810 F.2d 911, 913 (9th Cir. 1987) (Kennedy, J.)); *see also id.* at 821 (stressing statute of limitations' "plain letter").

This conclusion is reinforced by the Court's recent decision in *United States v. Douglas*, 525

---

[6]    *Lopez v. Gonzales*, 549 U.S. 47, 61 (2006) (Thomas, J., dissenting) (equating "punishable" with "capable of punishment" and "capable of being punished") (citations and internal quotes omitted).

F.3d 225 (2d Cir. 2008), which construed language identical to § 3281's.  Affirming a ruling of this

Court, *Douglas* rebuffed a defendant's claim that he was "statutorily punishable by death" – and thus

entitled to two attorneys under 18 U.S.C. § 3005 – "despite the government's notification that it

would not seek the death penalty." *Id.* at 234.  Because "the threat of capital punishment ha[d] been

irrevocably removed" and was not an "available" sentencing option, the Second Circuit explained,

there was no "possibility" that the death penalty could actually be imposed and the charged offense

lost its nominally "capital nature." *Id.* at 236-37 (citations and internal quotes omitted).  In other

words, where there is no "potential death sentence" and it is "clear" the defendant "would not be

subject" to one, the crime "may [not] be punished by death" and is no longer considered capital. *Id.*

at 229, 235, 238.  This reasoning confirms that Count Two is neither death-punishable nor capital

under § 3281, and therefore untimely under § 3282.

   Any theoretical ambiguity on this score – and there is none[7] – is resolved by "the traditional

canon of construction" strictly interpreting "criminal statutes and rules in favor of defendants,"

*United States v. Smith*, 360 U.S. 1, 10 (1959)[8]; the "venerable" rule of lenity, similarly interpreting

"ambiguous criminal laws ... in favor of the defendants subjected to them," *United States v. Santos*,

128 S. Ct. 2020, 2025 (2008) (plurality opinion); and the cardinal "principle that criminal limitations

_____

   [7]    *Cf. United States v. Martinez*, 505 F. Supp. 2d 1024, 1031 (D. N.M. Feb. 16, 2007) (suggesting that "capital offense" and "punishable by death" in § 3281 are at least ambiguous); *United States v. Boone*, 245 F.3d 352, 356 (4th Cir. 2001) (Kisser, Sr. D.J., sitting by designation, concurring and dissenting) (same as to "capital crime" in § 3005).

   [8]    *Accord, e.g., United States v. R.L.C.*, 915 F.2d 320, 325 (8th Cir. 1990) (*R.L.C. I*) ("Criminal statutes must be strictly construed.") (citing *United States v. Dowling*, 473 U.S. 207, 213 (1985)), *aff'd*, 503 U.S. 291 (1992).

statutes are to be liberally construed in favor of repose." *Kozeny*, 541 F.3d at 171 (citations and internal quotes omitted).

## D.       CONTRARY AUTHORITY FROM OTHER CIRCUITS IS UNPERSUASIVE

Though the Second Circuit has never addressed this precise issue in a binding opinion, three federal appeals courts – the Fourth, Eighth and Ninth circuits – have considered and rejected similar arguments.  *See Ealy*, 363 F.3d at 294-97 (§ 1512 murders committed in 1989 but charged in 2000 deemed both "punishable by death" and capital, and therefore timely under § 3281, despite death penalty's *ex post facto* preclusion based on *Furman*); *Edwards*, 159 F.3d at 1128 (arson indictments, otherwise time-barred under § 3282, held "punishable by death" and timely under § 3281 though defendants "could not have been subjected to the death penalty for their 1988 crimes" because "unconstitutional under *Furman*"); *Emery*, 186 F.3d at 924 (rejecting claim that Congress could not have intended § 1512, enacted in 1986, "to be a capital crime exempt from the five-year statute of limitations" because "capital punishment [then] prohibited by *Furman*"); *United States v. Manning*, 56 F.3d 1188, 1195-96 (9th Cir. 1995) (mail bomb murder under 18 U.S.C. § 1716, "punishable by death" when committed, remained "punishable 'at any time without limitation'" under § 3281 despite later Ninth Circuit decision voiding death penalty provisions).[9]

In general, these cases construe "punishable by death" in § 3281 as referring to the "serious nature" of the underlying crime – as reflected in the penalty prescribed by the charging statute –

_____

[9]        *Cf. Petrucelli*, 97 Fed. Appx. at 359-60 (nonprecedential plain error opinion holding 18 U.S.C. § 1959 murder "'punishable by death' within the meaning of 18 U.S.C. § 3281" despite claim that "none of the aggravating factors which would have justified a death sentence apply"); *Provenzano*, 423 F. Supp. at 663-66 (suggesting that subsequent Supreme Court case striking 18 U.S.C. § 1201's death penalty provision "might" not render 1961 kidnapping "non-capital" for § 3281 limitations purposes even though "no death penalty could be imposed") (*dictum*).

rather than, and regardless of, the "severity of the punishment" actually "available." *Id.* at 1196 (citations and internal quotes omitted); *Ealy*, 363 F.3d at 295, 296-97 (citation and internal quotes omitted). Essentially drawing a distinction between substance and procedure,[10] these cases surmise that Congress judged some crimes to be "so serious that an offender should always be punished if caught." *Manning*, 56 F.3d at 1196. Because they contravene Second Circuit precedent and are wrongly decided, these cases are unpersuasive and should not be followed.

1.    **The Sister Circuit Cases Are at Odds with Second Circuit Law**

The crime/punishment dichotomy posited in these opinions stems from *United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973),[11] an "outlier case"[12] widely criticized for its result if not its "mode of analysis."[13]  *See, e.g., Boone*, 245 F.3d at 360-61 (acknowledging other circuits' disagreement with *Watson*); *United States v. Shepherd*, 576 F.2d 719, 728-29 (7th Cir. 1978); *cf. Douglas*, 525 F.3d at 237.  Over a pithy dissent (496 F.2d at 1130-31), *Watson* held that a charged § 1111 murder remained a "capital crime" under 18 U.S.C. § 3005, "absolute[ly]" entitling the defendant to "two attorneys," despite the death penalty's presumed unavailability after *Furman. Id.* at 1129.  It reasoned that the "two-attorney requirement" was motivated by the grave and complex

---

[10]    *See, e.g., Edwards*, 159 F.3d at 1128; *Manning*, 56 F.3d at 1196; *Petrucelli*, 97 Fed. Appx. at 359; *Provenzano*, 423 F. Supp. at 664-65.

[11]    *See Ealy*, 363 F.3d at 297; *Manning*, 56 F.3d at 1196; *Provenzano*, 423 F. Supp. at 465-67 (all relying on *Watson*).

[12]    *Boone*, 245 F.3d at 366-68 (opinion concurring and dissenting).

[13]    *United States v. Kennedy*, 618 F.2d 557, 558 n.3 (9th Cir. 1980) (*per curiam*); *United States v. Davidson*, No. 92-CR-35, 1992 WL 165825, at *3-*4 nn.3-4 (N.D.N.Y. July 10, 1992).

nature of putative capital cases,[14] not solely by the possible risk of "exposure" to the death penalty's "imposition." *Id.* at 1127-28; *see, e.g., Shepherd*, 576 F.2d at 727 (*Watson* equates "capital crimes" with those "Congress has declared to be punishable by death rather than a crime that is in fact [so] punishable").

But the Second Circuit reached the opposite conclusion in *Douglas*, holding that a crime is *not* capital or punishable by death – and a defendant is *not* entitled to two attorneys under § 3005 – when the death penalty has been "eliminated" as an available sentencing option and its "threat" of imposition "irrevocably removed." 525 F.3d at 236 (citations, internal quotes and emphasis omitted). Along the way, the Court flatly rejected the Fourth Circuit's contrary "view" rooted in *Watson*, without even mentioning – much less endorsing – its crime/punishment dichotomy. *Id.* at 237. In this Circuit, then, the core premise of the adverse limitations cases – that death-punishability turns on offense severity rather than available penalty – has been discredited by *Douglas*. *But see United States v. Kostadinov*, 721 F.2d 411, 412 (2d Cir. 1983) (citing *Watson* for proposition that "capital case distinction" in former 18 U.S.C. § 3148, permitting bail denial where charged offense "punishable by death," derives from "nature" of crime, not "potential severity" of "punishment").

_____

[14]     Though not directly relevant here, the complexity rationale is suspect. After all, Congress has not prescribed two attorneys for white-collar tax, fraud, antitrust and money laundering violations, crimes far complicated than the violent offenses generally eligible for death. As the Seventh Circuit aptly observed: "Many kinds of criminal cases are typically more complex and difficult ... than those for which Congress has provided the death penalty. Yet no provision has been made for more than one appointed counsel in any but those involving a 'capital crime.'" *Shepherd*, 576 F.2d at 729. *Accord, e.g., Boone*, 245 F.3d at 366 (Kiser, D.J., sitting by designation, concurring and dissenting) ("it is the *finality of the punishment*, *not* the complexity of the offense, that undergirds the two-attorney requirement") (emphasis supplied); *Watson*, 496 F.2d at 1130-31 (Murray, D.J., sitting by designation, dissenting) ("Many [capital] cases are much simpler and easier to try ... than, for example, a multi-defendant narcotics conspiracy").

10

But even if *Kostadinov* and the crime/punishment dichotomy survive *Douglas* – which does not so much as cite *Kostadinov* – the Second Circuit has long since placed § 3281 in the punishment camp. As Judge Learned Hand wrote in a 1950 opinion that has never been overruled: "The statute, when it wiped out all limitation by the words, 'punishable by death,' did *not* make the *character* of the crime the test, but the *penalty* that could be imposed upon it"[15]; *i.e.*, a penalty the sentencer has "discretion" to impose. *Parrino*, 180 F.2d at 615 (emphasis supplied). Absent *en banc* or Supreme Court abrogation, reliance on competing readings is thus barred by *stare decisis. See, e.g., Consub Delaware LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 109 (2d Cir. 2008).

## 2.       The Sister Circuit Cases Are Wrongly Decided

Even were the law in this Circuit unsettled, however, the out-of-circuit limitations cases are unpersuasive on their own terms and should not be followed.

**First** and foremost, they contradict the plain meaning of "punishable by death" as used in § 3281 – capable of being so punished – as well as (a) basic notions of lenity and strictly construing ostensibly ambiguous criminal statutes, and (b) the key policy of repose behind all limitations periods. For these reasons alone, the out-of-circuit opinions cannot withstand scrutiny. *See supra* 7-8 & nn.7-8 and cases cited.

**Second**, the crime/punishment dichotomy espoused in those opinions – contrasting offense severity and potential penalty – is demonstrably false if not tautological:

---

[15]       Pre-*Douglas* dicta in *Hunter*, an unpublished district court opinion, assail *Parrino* on other inapposite grounds – themselves unfounded, a topic beyond this motion's scope – without questioning or even acknowledging its conception of § 3281 as penalty- rather than character-driven. 2008 WL 268065, at *4-*8. Worse, adverse *dicta* in *Provenzano*, 423 F. Supp. at 663-66, overlook *Parrino* entirely. And even if it were precedential or involved a preserved claim of error, *Petrucelli*'s rationale – like *Kostadinov*, on which it relied – has been superseded by *Douglas*.

11

a.    The two concepts are analytically linked – possible penalty defining and measuring offense seriousness[16] – and § 3281 would have identified covered and excluded crimes by their nature and character had Congress so intended. *Cf., e.g.,* 18 U.S.C. § 924(e)(2)(B) (defining "violent felony" as "any crime punishable by imprisonment ... exceeding one year" that has force as element; involves burglary, arson, extortion or explosives; or otherwise risks serious potential injury); U.S.S.G. § 4B1.2(a) (similar); Fed. R. Evid. 609(a) (permitting impeachment with all convictions "punishable by death or imprisonment in excess of one year," and with those involving "dishonesty or false statement" regardless of punishment).

b.    The crime/punishment dichotomy echoes if not effectively revives the distinction between offense elements and sentencing factors "jettisoned in *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000)," and associated cases. *Hunter*, 2008 WL 268065, at *4 n.4.

c.    If (i) the penalty prescribed by statute is the "*primary*," though not *exclusive*, "objective indicat[or] of the seriousness with which *society* regards the offense,"[17] (ii) punishable's plain meaning – capable of being punished by law – encompasses law made by courts as well as Congress,[18] and (iii) the Eighth Amendment incorporates contemporary social norms and evolving standards of decency,[19] it follows that *Furman* represented a societal judgment that *no crime*

---

[16]    *See, e.g., Hu Yau-Leung v. United States*, 649 F.2d 914, 917, 919 (2d Cir. 1981); *Lewis v. United States*, 518 U.S. 322, 326-30 (1996); 18 U.S.C. § 924(e)(2)(A) (defining "serious drug offense" by reference to maximum prison term allowable); 18 U.S.C. § 3553(a)(2)(A) (sentence should "reflect" offense "seriousness").

[17]    *Lewis*, 518 U.S. at 326-28 (citations and internal quotes omitted) (emphasis supplied).

[18]    *See supra* 5 and cases cited.

[19]    *See, e.g., Kennedy v. Louisiana*, 128 S. Ct. 2641, 2649-51 (2008).

12

committed during the death penalty's unconstitutionality was considered serious enough to be "punishable by death."  All crimes within that defined set are thus time-barred – including Count Two – even if one accepts the invalid crime/punishment dichotomy.

**Third**, to the extent that dichotomy would distinguish the substantive "nature of the crime" from the "procedural protections those who face a penalty as grave as death are to receive,"[20] it is misapplied to § 3281:

        a.      Limitations statutes "lie on the cusp of the procedural/substantive distinction," *Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886, 892 (2d Cir. 1995) (Cabranes, J., concurring) (citations omitted), and "may fairly be described as either" in "different" contexts. *Enterprise Mtge. Acceptance Co., LLC, Sec. Lit. v. Enterprise Mtge. Acceptance Co.*, 391 F.3d 401, 409 (2d Cir. 2004) (footnote and citations omitted); *cf. Church*, 151 F. Supp. 2d at 719-20 (noting that Supreme Court has "expressly rejected the procedural/substantive distinction as confusing" for *ex post facto* purposes) (citation omitted).

        b.      In the criminal context, limitations statutes – unlike, say, Fed. R. Crim. P. 24 (extra peremptory strikes in capital cases) and 18 U.S.C. §§ 3005 (second counsel), 3432 (witness and juror lists) and former 3148 (capital bail restrictions)[21] – provide a "complete defense to prosecution," and are "acts of grace or oblivion, [] *not* of process." *Stogner v. California*, 539 U.S. 607, 618-19, 632 (2003) (citations and internal quotes omitted) (emphasis supplied).  As the

---

[20]    *Edwards*, 159 F.3d at 1128 (quoting *Manning*, 56 F.3d at 1196) (internal quotation marks omitted); *see supra* 9 & n.10 and cases cited.

[21]    *See, e.g., Shepherd*, 576 F.2d at 728-29 & n.12 (characterizing most of these provisions as "procedural" in nature).

Supreme Court explains, criminal limitations statutes give defendants "fair warning" of the need to

"preserve exculpatory evidence,"

> reflect[ing] a legislative judgment that, after a certain
> time, no quantum of evidence is sufficient to convict.
> And that judgment typically rests, in large part, upon
> evidentiary concerns – for example, concern that the
> passage of time has eroded memories or made
> witnesses or other evidence unavailable.  Indeed, this
> Court once described statutes of limitations as
> creating a [conclusive] presumption which renders
> proof unnecessary ... [and] forbid[s] prosecution
> [altogether].

*Id.* at 611, 615-16 (citations and internal quotes omitted); *accord, e.g., Podde*, 105 F.3d at 819

(limitations statutes "provide predictability" and protect defendants' rights by "specifying a limit

beyond which there is an irrebuttable presumption that ... fair trial would be prejudiced") (citation

and internal quotes omitted).   Viewed in this light, § 3281 constitutes a classic substantive

reconciliation of competing values and policies, bearing directly on the "merits" of criminal

culpability.   *United States v. Oppenheimer*, 242 U.S. 85, 87-88 (1916) (Holmes, J.) (citation

omitted).

> c.      Whatever its viability in other situations, the procedure/substance distinction

makes no sense here, where Watts maintains that Count Two – and indeed any post-*Furman*, pre-

FDPA crime – is not "punishable by death" under any circumstance, regardless of the procedure

employed.

**Fourth**, in reading "punishable by death" to mean "maximum penalty authorized by the

charging statute" – even if legally off-limits[22] – the out-of-circuit cases further countermand

---

22      *See, e.g., Ealy*, 363 F.3d 296-97; *Boone*, 245 F.3d at 358-59; *Martinez*, 505 F. Supp.
(continued...)

*Apprendi*, which pegged the statutory maximum concept to the presumptive sentencing range actually available. Thus, in the mandatory Guidelines era when Weiss was allegedly killed, the presumptive Guideline range – level 43 for murder, carrying a life sentence rather than the death penalty – *was* the effective statutory maximum, making the crime non-capital and barring prosecution even on the other circuits' approach. *See, e.g., United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *R.L.C. II*, 503 U.S. at 1333, 1339; *R.L.C. I*, 915 F.2d at 325 (explaining that "statutory maximum penalties" were "disfavor[ed]" by Sentencing Reform Act's "drafters" because they bore little relation to offense "seriousness") (citing legislative history).

Had Congress intended § 3281 to turn on the "maximum [sentence] prescribed by the relevant criminal statute," an "established" concept dotting the U.S. Code, *Rodriquez*, 128 S. Ct. at 1793-94, it would have said, for example, "maximum [penalty ...] authorized by the law describing the offense," 18 U.S.C. § 3559(b) – not the distinctive words "punishable by death." *Cf., e.g., id.* § 3559(a) ("maximum term of imprisonment authorized"); *id.* § 3142(f)(1)(B) ("maximum sentence [of] life imprisonment or death"); 28 U.S.C. § 994(h) ("maximum term authorized"); U.S.S.G. § 1B1.9, cmt. n.1 ("maximum authorized term of imprisonment"); *id.* § 4B1.1, cmt. n.2 ("maximum term of imprisonment authorized"; "maximum authorized term of imprisonment"; "offense statutory maximum"); *LaBonte*, 520 U.S. at 775 (Breyer, J., joined by Stevens and Ginsburg, JJ., dissenting) (equating "maximum term of an offense" with "term prescribed by the provision of law defining the offense") (citation and internal quotes omitted).

_____

[22](...continued)
at 1031-32.

Likewise, Congress could have expressly addressed § 3281 to capital crimes as defined by statute regardless of available punishment – especially by so amending the provision after *Furman* – had it meant or wanted to.  *Cf., e.g.,* U.S.S.G. § 2K2.1, cmt. n.5 (defining "Felony conviction" as one for offense "punishable by death or imprisonment for [more than a] year ... *regardless of the actual sentence imposed*") (emphasis supplied); *id.* § 4B1.2, cmt. n.2 (similar).  The short answer, however, is that "Congress did not write the statute that way."  *Corley v. United States,* _ S. Ct. _, 2009 WL 901513, at *8 (April 6, 2009) (citations and internal quotes omitted).

**Fifth**, the *ex post facto* and due process clauses look past the "form" of state power "exerted" to reach both "judicial" and legislative acts.  *Stogner*, 539 U.S. at 616-17 (citations and internal quotes omitted).  If this Court now adopts the other circuits' position, it would thus upset *Parrino*'s settled "interpretation" of § 3281 – tying "punishable by death" to a penalty within the jury's discretion, not the crime's character – as of the 1989 conduct charged in this case.  *Kozeny*, 541 F.3d at 175-76.  That, in turn, would effectively extend the statute of limitations long after it ran in 1994, stripping Watts of a vested defense and raising serious constitutional concerns.  *Stogner*, 539 U.S. at 616-17 ("*Ex Post Facto* Clause forbids" revival of expired limitations periods and "resurrection of [] time-barred prosecution[s]").  To avoid these "non-frivolous constitutional objection[s]," the Court should read § 3281 as Watts suggests and this Circuit's law, language and logic demand, rejecting other courts' "doubtful" construction.  *Kozeny*, 541 F.3d at 176 ("where a statute is susceptible of two constructions," one raising "grave and doubtful constitutional questions" and the other avoiding them, court must "adopt the latter") (citation and internal quotes omitted).

For these principal reasons and too many others to mention, the out-of-circuit limitations cases lack persuasive force and should be given little weight.

16

E.      **CONCLUSION**

Because capital punishment is categorically unavailable in this case and could not be imposed

under any conceivable circumstance – legally, factually or literally – Count Two does not and cannot

allege an offense "punishable by death," 18 U.S.C. § 3281, and is barred by the five-year statute of

limitations for non-capital crimes, *id.* § 3282(a).  It therefore must be dismissed.

**POINT II**

**COUNT TWO IS BARRED BY DOUBLE
JEOPARDY AND ITS *RES JUDICATA*
COMPONENT**

In the midst of a 1996 jury trial in the Eastern District of New York, Watts pleaded guilty,

per negotiated agreement under former Criminal Rule 11(e)(1)(C) (now 11(c)(1)(C)), to Count Two

of a nine-count superseding indictment charging various racketeering-related offenses.  *See* Feb. 15,

1996 plea agreement in *United States v. Joseph Watts*, 93 CR 294 (S-2) (CPS) (E.D.N.Y.) (Ex. A).

By the agreement's terms, Watts received a specific six year sentence and the government dismissed

the remaining charges at sentencing in full satisfaction of the indictment.  *See Watts* Sent. Tr., June

11, 1996 (Ex. B).  Among the charges dismissed, Count Six[23] accused Watts of conspiring to murder

---

[23]      Count Six of the *Watts* indictment read in relevant part:

> In or about and between August 1989 and September
> 11, 1989, within the Eastern District of New York and
> elsewhere, the defendant JOSEPH WATTS, together
> with James Failla, Dominick Borghese, John Gotti,
> Salvatore Gravano and others, for the purpose of
> gaining entrance to and maintaining and increasing
> position in the Gambino Family, an enterprise
> engaged in racketeering activity, conspired to murder
> Fred E. Weiss, in violation of New York Penal Law
> Sections 125.25 and 105.15.

17

Fred Weiss "for the purpose of gaining entrance to and maintaining and increasing position in the Gambino [Crime] Family," 18 U.S.C. § 1959(a)(5), while Count One (substantive RICO), Racketeering Act Three[24] couched the Weiss murder conspiracy as a "violation of New York Penal Law." Ex. A at 21, 26. (We jointly refer to Count Six and Racketeering Act Three as the "Dismissed Charges.")

Thirteen years later, the government seeks to prosecute Watts for the same crime by a different name, claiming that he aided and abetted Weiss's murder, 18 U.S.C. §§ 1512(a)(1) and 2,

---

[24]        Racketeering Act Three of the *Watts* indictment alleged in part:

> On or about and between August 1, 1989 and September 11, 1989, both dates being approximate and inclusive, with the Eastern District of New York and elsewhere, the defendant JOSEPH WATTS, together with James Failla, Dominick Borghese, John Gotti, Salvatore Gravano, and others, conspired to murder Fred E. Weiss, in violation of New York Penal Law Sections 125.25 and 105.15.

18

to keep him from becoming a government witness. *D'Amico* indictment ¶ 15.[25]  Double jeopardy

and *res judicata* bar the attempt, demanding Count Two's dismissal.

**First**, jeopardy unquestionably attached to the Dismissed Charges with the *Watts* jury's

impanelment. *See, e.g., United States v. Podde,* 105 F.3d 813, 816 (2d Cir. 1997); *United States v.*

*Fontanez,* 869 F.2d 180, 183 (2d Cir. 1989).

**Second**, Count Two constitutes the same offense as the Dismissed Charges "'in fact and ...

law.'" *United States v. Olmeda,* 461 F.3d 271, 282 (2d Cir. 2006) (quoting *United States v. Estrada,*

320 F.3d 173, 180 (2d Cir. 2003)).

      A.     Given its formal judicial admissions in other prosecutions in this District, the

government cannot and will not contend that Watts was Weiss's actual killer. *See infra* **POINT IV**.

---

[25]      Count Two of the *D'Amico* indictment says in relevant part:

> From in or about September 1, 1989 to in or about September 11, 1989, in the Southern District of New York, the Eastern District of New York, and elsewhere, JOHN D'AMICO ... and JOSEPH WATTS, an associate in the Gambino Organized Crime Family, ... unlawfully, willfully, and knowingly did kill, and aided and abetted others in killing, Frederick Weiss with intent to (a) prevent the attendance and testimony of Frederic Weiss in an official proceeding, and (b) prevent the communication by Frederick Weiss to a law enforcement officer or Judge of the United States information relating to the commission and possible commission of a Federal offense, to wit, D'AMICO and WATTS ... murdered and aided and abetted the murder of Frederick Weiss, a potential witness in the pending trial of <u>United States</u> v. <u>Angelo Paccione, et al.</u>, 89 Cr. 446 (CBM), a matter pending before the United States District Court for the Southern District of New York.

Rather, the most it can claim is that he aided and abetted the murder.  Where Weiss was concededly

killed by members of the DeCavalcante Crime Family, *id.* – not by Watts or the Gambinos – the

*D'Amico* "aiding and abetting" charge is "based" solely on the *Watts* "agreement," *United States v.*

*Iannelli*, 420 U.S. 770, 778 n.10 (1975), and cannot stand.

        B.      Indeed, it is settled that "an aiding and abetting charge" is "implicit in every

indictment," *United States v. Mucciante,* 21 F.3d 1228, 1234 (2d Cir. 1994), including indictments

for conspiracy, *e.g., United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994).  It follows, then, that

the government has already prosecuted Watts on that theory, either actually or constructively.  *See*

*also United States v. Sabatino*, 943 F.2d 94, 99-100 (1st Cir. 1991); *United States v. Megna*, 450 F.2d

511, 512 (5th Cir. 1971); *Virella v. United States*, 750 F. Supp. 111, 115 (S.D.N.Y. 1990).

        C.      Of necessity, anyone accused as an organized crime "associate" of killing a

"potential witness" to "prevent" his "testimony" and cooperation, *D'Amico* indictment ¶ 15, also acts

to "maintain[] ... position" in a racketeering "enterprise."  Ex. A at 26.  Otherwise the organized

crime allegation is pure surplusage.  *See* Fed. R. Crim. P. 7(d).  Thus, as a "practical"[26] matter,

VICAR murder is a "species of lesser-included offense"[27] of § 1512 murder in the circumstances at

hand, precluding reprosecution under cardinal jeopardy principles.  *See, e.g., Morris v. Reynolds*, 264

F.3d 38, 49 (2d Cir. 2001) ("'for purposes of barring successive prosecutions' a greater offense is

the same offense as a lesser included offense") (quoting *Brown v. Ohio*, 432 U.S. 161, 166 (1977))

(additional citation omitted); *Ohio v. Johnson*, 467 U.S. 493, 501 (1984).  This is a case in point, as

---

    [26]    *Cf. Sealfon v. United States*, 332 U.S. 575, 579 (1948) (jeopardy-related claims to be
"viewed" in a "practical frame," with "an eye to all the circumstances of the proceedings").

    [27]    *Illinois v. Vitale*, 447 U.S. 410, 420 (1980).

the *Watts* indictment expressly alleged that the conspirators were "concerned that ... Weiss was cooperating with the government." Ex. A. at 21.

**Third**, double jeopardy's central "purposes and policies," *Serfass v. United States*, 420 U.S. 377, 388 (1975) – promoting finality, restraining state power and preserving a defendant's "valued right" to his "chosen jury" – are squarely implicated here. *Podde*, 105 F.3d at 816-17 & n.2 (citations and internal quotes omitted). After a "full and fair opportunity" to "marshal its evidence and resources," *Morris*, 264 F.3d at 44-45, the government opted to terminate Watts' 1996 trial for the certainty of a six-year sentence. *Cf. United States v. Dahlstrum*, 655 F.2d 971, 975-76 (9th Cir. 1981). Now having exacted that penalty, the government regrets its decision and would bring back the same defunct charge merely by renaming it. *Contra United States v. Dionisio*, 503 F.3d 78, 83 (2d Cir. 2007) (jeopardy analysis looks to substance over "formalistic labels"). This is a signature jeopardy violation at the core of the clause's proscription. *See, e.g., United States v. Dionisio*, 415 F. Supp. 2d 191, 199-200 (E.D.N.Y. 2006) (clause "prohibits" government from "fragmenting" same conduct into "different crimes" in successive prosecutions) (citations and internal quotes omitted), *aff'd*, 503 F.3d 78; *Fransaw v. Lynaugh*, 810 F.2d 527, 528 (5th Cir. 1987) (clause forbids government from wearing defendants down by repetitive prosecutions for the same offense).

The double jeopardy clause cannot be evaded simply by digging up a previously litigated crime and calling it something else. With the expansion of federal jurisdiction, the U.S. Code has become a sprawling compendium of "technically distinct []though factually overlapping" statutory offenses. *United States v. Bailin*, 977 F.2d 270, 277 (7th Cir. 1992); *see* John S. Baker, Jr., *Revisiting the Explosive Growth of Federal Crimes*, 26 Heritage Foundation Legal Memorandum 1 (June 16, 2008). In a scheme so vast and complex, prosecutors can always find new ways to reconfigure and

resurrect moribund charges, extinguishing finality and skirting jeopardy protection with impunity. This is a recipe for manipulation that would swallow the clause entirely.  It should not be condoned.

**Fourth**, beyond the jeopardy bar, Count Two of the *D'Amico* indictment is independently precluded by the clause's *res judicata* component.  *See, e.g., Sealfon*, 332 U.S. at 578 (*res judicata* "applies to criminal as well as civil proceedings" and "may be a defense in a second prosecution") (collecting cases); *United States v. Fassoulis*, 445 F.2d 13, 18 n.11 (2d Cir. 1971) (*res judicata* has "constitutional standing in criminal cases" by virtue of "Fifth Amendment guarantee against double jeopardy") (citations omitted).

    A.    The prior *Watts* "action," *Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001), was resolved by "final judgment," *In re Teltronics*, 762 F.2d 185, 190 (2d Cir. 1985), convicting him on Count Two, imposing a 72-month sentence and dismissing the remaining charges per heavily negotiated 11(e)(1)(C) plea.  *Cf. United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir. 1999) (jeopardy attaches on acceptance of guilty plea).

    B.    The "previous action involved the same parties," *Pike*, 266 F.3d at 90: Watts and the United States, respectively.  *Cf. United States v. Sewell*, 252 F.3d 647, 651 (2d Cir. 2001) (United States is single sovereign for double jeopardy purposes).

    C.    The § 1512 claim "could have been raised," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) – but wasn't – years ago in *Watts*.  It was part of the "same transaction or connected series of transactions," *Pike*, 266 F.3d at 91 (citation and internal quotes omitted), allegedly aimed at killing Weiss; the government knew of the 1989 *Paccione* trial and

Weiss's potential appearance in 1996 no less than today[28]; the *Watts* indictment actually alleged the conspirators were "concerned" about Weiss's suspected cooperation[29]; and the government already had at least the accomplice testimony of Sam Gravano and Dom Borghese.

D.     Last, the government enjoyed but abandoned a "full and fair opportunity to litigate," *EDP Medical Computer Systems, Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007), aborting Watts' ongoing trial to negotiate a comprehensive disposition with an agreed-upon sentence.  Having reaped the benefits of that choice – finality and certainty – the government must accept its consequences: dismissal of Count Two under the doctrines of double jeopardy and *res judicata. Id.* ("*Res judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the [opposing] party ... had a full and fair opportunity to litigate the claim.") (citation omitted).

## POINT III

## COUNT TWO IS BARRED BY WATTS' 1996 PLEA AGREEMENT

If brought in the Eastern District instead of this one, Count Two would undeniably violate ¶ 4(b) of Watts' Brooklyn plea agreement: "[This Office] will bring no further criminal charges against the defendant for the *conduct* described in the superseding indictment...."  Ex. A at 3 (emphasis supplied).[30]  To escape this restriction, the government has simply walked Count Two

---

[28]     *See supra* n.25.

[29]     *See supra* 20.

[30]     As discussed in **POINTS II** and **IV**, no new "facts" unknown to the government when entering the agreement – as opposed to arguably new evidence and witnesses – "support[]" Count Two. Ex. A at 3.  On the contrary, the government has fully rehearsed the facts of Weiss's murder in numerous trials in this courthouse, and they largely match the descriptions in at least
(continued...)

over the East River and across the Brooklyn Bridge, bringing it in Foley Square rather than Cadman Plaza.  That gambit violates the agreement in spirit if not letter, transgressing due process and subverting the duty of good faith and fair dealing implicit in all plea contracts.  *See, e.g., United States v. Gotti*, 457 F. Supp. 2d 411, 424 & nn.76, 80 (S.D.N.Y. 2006) (Scheindlin, J.) (plea agreements construed strictly against government as drafter, with "special due process concerns for fairness and [] adequacy of procedural safeguards") (citations and internal quotes omitted); *Wade v. United States*, 504 U.S. 181, 186 (1992) (government may not withhold promised benefit in bad faith or for reasons not rationally related to legitimate government end).

When "the *government*" successfully "move[d] to dismiss"[31] the Weiss murder conspiracy charges at Watts' 1996 sentencing under the Brooklyn plea agreement, it did so in the name of the United States of America as a single sovereign entity.  *Cf., e.g., United States v. Sewell*, 252 F.3d 647, 651 (2d Cir. 2001) (government is single sovereign for double jeopardy purposes); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (knowledge of one government office generally, though "not in all instances," imputed to others for *Brady*[32] disclosure purposes).  Watts has complied with the agreement's terms, and the government has reaped its rewards in the form of a six-year sentence and significant resource savings.  In these circumstances, and given ¶ 4(b)'s carefully chosen words, Watts could not have "reasonably understood" when entering the plea, *Stern v. Shalala*, 14 F.3d 148, 150 (2d Cir. 1994) (citation and internal quotes omitted), that the

---

[30](...continued)
Gravano's and Borghese's 302s as produced in other cases.  *See supra* 23.

[31]        Ex. B at 19 (emphasis supplied).

[32]        *See Brady v. Maryland*, 373 U.S. 83 (1963).

government would try to reprosecute him for the same "conduct," Ex. A at 3, 13 years later and two miles away.   This is particularly true because the Brooklyn indictment expressly lodged the Dismissed Charges in "the Eastern District of New York and elsewhere," *id.* at 21, 26, presumably including the Southern District.   *Cf. United States v. Olmeda*, 461 F.3d 271, 283-84 (2d Cir. 2006) (relying on similar charging language to hold that Eastern District of North Carolina prosecution barred subsequent prosecution for similar conduct in Southern District of New York).

The government's actions here ill-fit the "meticulous standards of [] promise and performance" attending plea arrangements.   *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999) (citation and internal quotes omitted).   And they will only will discourage defendants from making such deals, undermining public policy and thwarting the interests of prosecutors, judges and defendants alike. After all, "trust between defendants and prosecutors ... is necessary to sustain plea bargaining – an 'essential' and 'highly desirable' part of the criminal process." *Puckett v. United States*, 129 S. Ct. 1423, 1432 (2009) (quoting *Santobello v. New York*, 404 U.S. 257, 261-62 (1971)).   As Judge Scheindlin explains:

> [W]ith respect to federal prosecutions, the courts' concerns [in plea contract cases] run even wider than protection of the defendant's individual constitutional rights – to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal system of government.

*Gotti*, 457 F. Supp. at 424 (citing *United States v. Ready*, 82 F.3d 551, 558 (2d Cir. 1996)) (footnote omitted).

As in **POINT II**, these "concerns" are squarely implicated here.  To vindicate them, the Court should dismiss Count Two in its supervisory power as breaching Watts' plea agreement and offending due process.

### POINT IV

### THE GOVERNMENT IS ESTOPPED FROM CLAIMING THAT WATTS MURDERED WEISS OR AIDED AND ABETTED THE CRIME

In multiple prosecutions in this District,[33] the government has unequivocally maintained, through sworn testimony from cooperating witnesses[34] and affirmative arguments to judges and juries, that Weiss was shot dead by members and associates of the DeCavalcante Organized Crime Family – including Anthony Capo, Vincent Palermo and James Gallo – by order of then Gambino Family boss John J. Gotti.  According to the government's own evidence and admissions in those cases, Gotti took the "hit" away from Watts and the Gambinos and reassigned it to the DeCavalcantes after the former tried but couldn't get close to Weiss.

As a matter of law, the Gambinos' preparatory attempts to kill Weiss – futile as they were – could not have aided and abetted the DeCavalcantes in later killing him independently.  It is not enough that Watts allegedly agreed or tried to murder Weiss, nor even that he knew the DeCavalcantes were to murder Weiss and hoped they would succeed.  *United States v. Pipola*, 83

---

[33]     On information and belief, these prosecutions may include, among others, *United States v. Giovanni Riggi, et al.,* 00 CR 1118 (MBM) (several separate jury trials); *United States v. Frederico Giovanelli, et al.,* 01 CR 749 (JSR); *United States v. Peter Gotti, et al.,* 02 CR 743 (RCC); and *United States v. John A. Gotti, et al.,* 04 CR 690 (SAS) (three successive jury trials).

[34]     On information and belief, these witnesses may include, among others, Anthony Capo, Vincent Palermo, Anthony Rotondo, Frank Fappiano, Michael DiLeonardo and Joseph D'Angelo.

F.3d 556, 562 (2d Cir. 1996) ("mere knowledge" alone insufficient to convict on aiding and abetting theory). Instead, Watts must have actually *aided* the DeCavalcantes in carrying out the assassination. *See United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994) (defendant "cannot be convicted as an aider and abettor unless he consciously assisted the [crime's] commission ... in some active way") (citation and internal quotes omitted); *accord Pipola*, 83 F.3d at 562 (evidence must "demonstrate that the defendant joined and shared in the underlying endeavor and that his efforts contributed to its success"); *United States v. Nusraty*, 876 F.2d 759, 766 (2d Cir. 1989) (defendant must have "*furthered* the criminal act").  Yet the government's own witnesses and assertions flatly dispel that notion, purporting to establish that the contract was pulled from the Gambinos for incompetence and given to the DeCavalcantes for successful completion.

At any rate, having repeatedly ascribed the murder to the DeCavalcantes in other courtrooms in this very building, the government is now "estopped" from reversing course and trying to pin its commission on Watts.   *United States v. Gotti*, 457 F. Supp. 2d 411, 428 (S.D.N.Y. 2006) (Scheindlin, J.); *cf. United States v. Urso,* 369 F. Supp. 2d 254, 263 (E.D.N.Y. 2005); *Nichols v. Scott*, 69 F.3d 1255, 1268-72 (5th Cir. 1999).  Due process "forbids" the use of such "inconsistent, irreconcilable theories" to prosecute different defendants for "the same event[s]." *Smith v. Groose*, 205 F.3d 1045, 1049 (8th Cir. 2000); *see Jacobs v. Scott*, 513 U.S. 1067, 1070 (1995) (Stevens, J., dissenting from denial of execution stay) (noting "serious questions" raised when "sovereign itself takes inconsistent positions in ... separate criminal proceedings against two of its citizens") (citation and internal quotes omitted); *United States v. Boyle*, No. 05-4239-cr, 283 Fed. Appx. 825, 826, 2007 WL 4102738, at **1 (2d Cir. Nov. 19, 2007) (unpublished) (resort to "'inherently factually contradictory theories violates [] principles of due process'") (quoting *Smith*, 205 F.3d at 1052, and

27

citing *Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004), *vacated on other grounds*, *Bradshaw*

*v. Stumpf*, 545 U.S. 175 (2005)), *cert. granted*, 129 S. Ct. 29 (2008).

 *Smith* involved a double murder committed during a home invasion robbery by two groups

of hoodlums: the Cunningham Group and the Lytle Group (including defendant Smith).  At Smith's

trial, the prosecution claimed that Bowman, one of his accomplices, stabbed the victims after the

Lytle Group had joined the Cunningham Group in the home to finish the robbery.   But the

prosecution took a contrary position in Cunningham's subsequent trial, contending that his group

had committed the murders before Smith and the rest of the Lytle Group even arrived on the scene.

 The Eighth Circuit reversed Smith's conviction, denouncing the State's "inconsistent

prosecutorial theories" and "manipulation of ... evidence."  205 F.3d at 1047, 1051.  The Court

opined:

> The State's use of factually contradictory theories in
> this case constituted "foul blows," error that fatally
> infected Smith's conviction....  The State's duty to its
> citizens does not allow it to pursue as many
> convictions as possible without regard to fairness and
> the search for truth....
>
> [T]he use of inherently factually contradictory theories
> violates the principles of due process....  In Smith's
> case ..., the relevant variation was neither minor nor
> found in the testimony at trial....
>
> [T]he State's zeal to obtain multiple murder
> convictions on diametrically opposed testimony
> renders Smith's convictions infirm.

*Id.* at 1051-52; *accord Thompson v. Calderone*, 120 F.3d 1045, 1055-60 (9th Cir. 1997) (*en banc*)

(voiding conviction on due process grounds where prosecution advanced "totally inconsistent" and

"directly conflict[ing]" murder theories, arguing in first trial that Thompson committed crime alone

and in second that another defendant was responsible), *vacated on other grounds*, 523 U.S. 538 (1998); *cf. Stumpf*, 545 U.S. at 185-88 (remanding for determination whether "prosecutorial inconsistencies" in successive proceedings affected petitioner's death sentence).

Here, the claim that Watts aided and abetted Weiss's murder – or, better yet, actually killed him – "inherently" contradicts the government's prior judicial admissions that Weiss was separately gunned down by the DeCavalcantes after the Gambinos allegedly botched the job. *Smith*, 205 F.3d at 1051-52. Since the "inconsistency" goes to the "core" of the case, *id.*, and "no new *significant* evidence" has emerged,[35] due process precludes the government from pursuing this "diametrically opposed" and factually incompatible murder theory. *Smith*, 205 F.3d at 1051-52.

For these reasons, and because the government has fully proffered its Weiss murder proof before numerous judges and juries in this very courthouse, the Court should dismiss Count Two as legally untenable and estopped by inconsistent prosecutorial theories. *See United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) (sufficiency of evidence appropriately addressed pretrial on "full proffer" of government's intended proof); *accord, e.g., United States v. Mennuti*, 639 F.2d 107 (2d Cir. 1981); *Gotti*, 457 F. Supp. 2d at 411, 421-22 & n.56, 425 & n.81, 428-30 (exercising this pretrial dismissal authority and collecting additional cases in support); *United States v. Woodbine*, No. 02 CR 150 (LAP), 2003 WL 1212972, at *1 (S.D.N.Y. March 17, 2003); *United States v. Nachamie*, 101 F. Supp. 2d 134, 153-55 (S.D.N.Y. 2000) (Scheindlin, J.). Why should Watts bear the "enormous burdens and risks of a major trial," *United States v. Castellano*, 610 F. Supp. 1359,

---

[35]     *Thompson*, 120 F.3d at 1058 (emphasis supplied); *see supra* n.30.  *But see Stumpf*, 545 U.S. at 187-90 (Souter, J., concurring) (suggesting that "necessarily contradict[ory]" theories may "violate[] the basic due process standard, barring fundamentally unfair procedure," even where "new witness" testifies at second trial).

1398 (S.D.N.Y. 1985), just because the government has "play[ed] fast and loose with the courts" by adopting "inconsistent positions in successive suits"?  *Wight v. Bankamerica Corp.,* 219 F.3d 79, 89 (2d Cir. 2000).

Failing dismissal, Watts alternatively requests *Brady* production of all government witness statements – including trial testimony, 302s and rough notes – concerning the Weiss homicide.  *See supra* nn.32-34.  Finally, we join all applicable motions filed by codefendant John D'Amico.

**CONCLUSION**

The Court should grant Watts' motions and dismiss his indictment.

Dated:      New York, New York
            April 29, 2009

Respectfully submitted,

**LAW OFFICES OF GERALD SHARGEL**

BY: _____

**GERALD L. SHARGEL**
**LAW OFFICES OF GERALD SHARGEL**
570 Lexington Ave. Fl. 45
New York, NY 10012
(212) 446-2323
gshargel@shargellaw.com

**MARC FERNICH**
**LAW OFFICE OF MARC FERNICH**
152 W. 57th St. Fl. 24
New York, NY 10019
(212) 446-2346
maf@fernichlaw.com

**JOEL WINOGRAD**
**WINOGRAD & WINOGRAD, P.C.**
450 Seventh Ave. Fl. 13
New York, NY 10123
(212) 268-6900
joelwinograd@gmail.com

*Attorneys for Joseph Watts*

On the Memorandum:

    Marc Fernich