UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

       -v-                                                            No. 09 CR 62 (CM)

JOHN D'AMICO, et al.,

                     *Defendants.*

------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOSEPH WATTS' SECOND SET OF PRETRIAL MOTIONS

GERALD L. SHARGEL
570 Lexington Ave. Fl. 45
New York, NY 10022
(212) 446-2323
gshargel@shargellaw.com

MARC FERNICH, ESQ.
LAW OFFICE OF MARC FERNICH
152 W. 57th St. Fl. 24
New York, NY 10019
(212) 446-2346
maf@fernichlaw.com

JOEL WINOGRAD, ESQ.
WINOGRAD & WINOGRAD, P.C.
450 Seventh Ave. Fl. 13
New York, NY 10123
(212) 268-6900
joelwinograd@gmail.com

*Attorneys for Joseph Watts*

# **TABLE OF CONTENTS**

INTRODUCTION……………………………………….…………………...……1

ARGUMENT…………………………………………………………………….....1

I.   COUNT ONE MUST BE DISMISSED AS IMPERMISSIBLY VAGUE………..1

II.  FRUITS OF THE AMERICAN SEARCH MUST BE SUPPRESSED…………..7

CONCLUSION……………………………………………………………...……12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

    -v-                                                     S1 09 Cr. 62 (CM)

JOHN D'AMICO, *et al.*,

                              *Defendants.*
------------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF DEFENDANT JOSEPH WATTS'S SECOND SET OF PRETRIAL MOTIONS

Joseph Watts respectfully moves to dismiss Count One of the superseding indictment in this case, charging racketeering conspiracy in violation of 18 U.S.C. § 1962(d), as impermissibly vague. Watts also seeks a bill of particulars and challenges the search of a corporate office occupied by a company called American Blast, Ltd. ("American").

## ARGUMENT

### POINT I

### COUNT ONE MUST BE DISMISSED AS IMPERMISSIBLY VAGUE

To establish a RICO conspiracy, the government must prove that a defendant agreed to the conduct of an "enterprise" through a "pattern of racketeering activity." *U.S. v. Yannotti*, 541 F.3d 112, 121 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 1648 (2009). In turn, the requisite "pattern" connotes an agreement that some individual – a RICO "person" – would commit at least two related and continuous acts of racketeering as defined in 18 U.S.C. §§ 1961(1), (5) and *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989). *See, e.g., Salinas v. U.S.*, 552 U.S. 52, 65 (1997) (RICO conspirator must "intend to further" completed "endeavor" that would satisfy all elements of object offense); 3

L. Sand, *et al.*, Modern Federal Jury Instructions – Criminal, Inst. 52-23 (Matthew Bender) (object § 1962(c) offense requires proof "that the *defendant* engaged in a pattern of racketeering activity") (emphasis supplied); *U.S. v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (evidence showed "pattern of racketeering activity by *each defendant*") (emphasis supplied).

Watts's indictment departs from these principles, and upends settled RICO practice in the Southern and Eastern Districts, by failing to specify *any* predicate racketeering acts to whose commission the defendants allegedly agreed. Instead, the indictment asserts blocs of criminal activity described only by generic category – "acts and threats involving" or "indictable" as a range of traditional mafia offenses – covering an epic 30-year period. *See* indictment ¶¶ 13-15. Strikingly absent is any indication of the predicate acts' factual components: bare essentials like dates, places, participants and victims. In short, the indictment alleges decades of criminal conduct by unnamed perpetrators against unknown targets in wholly indeterminate circumstances.

A 30-year RICO conspiracy count with no enumerated predicate acts – and no apparent means of identifying them – is a model of vagueness and a recipe for trial by ambush. Among its vices, such an unorthodox pleading fails to apprise Watts of the charge he must meet and prevents him from formulating a defense. It makes it impossible to decipher whether any two acts would have been committed by any one individual, whether those acts would have been related and continuous, or whether they would otherwise amount to a pattern under § 1961 and *H.J. Contra U.S. v. Pizzonia*, 577 F.3d 455, 465-66 (2d Cir. 2009) (extolling "continuity aspect of RICO's pattern element" as racketeering's "hallmark"). It invites the government to amend or vary the agreed-upon acts at will, risking conviction for patterns different from those presented to the grand jury and without unanimity as to the acts allegedly contemplated. *Cf. id.* at 466 & n.6. And, most pernicious, it encourages

repetitive prosecutions for the same putative pattern(s), as Watts cannot claim double jeopardy – a core purpose of a valid indictment – if he cannot discern the acts to whose commission he allegedly agreed. *See U.S. v. Russotti*, 717 F.2d 27, 33 (2d Cir. 1983) (unit of prosecution for RICO conspiracy is pattern plus enterprise).

In this regard, we note that prosecutors are directed to allege "pattern[s] of racketeering activity" that consist of – rather than include – "the acts of racketeering" precisely to "avoid double jeopardy problems" if a "defendant is charged with a subsequent RICO violation." U.S. Dep't of Justice, Racketeer Influenced & Corrupt Organizations Act, A Manual for Federal Prosecutors 222 (4th rev. ed. 2000) (footnotes omitted). In a case where a § 1962(d) indictment enumerated seven specific predicate acts, the Second Circuit recently suggested that even this prescribed "pleading practice" may not suffice to "avoid the identified double jeopardy concerns." *Pizzonia*, 577 F.3d at 464. It follows that an indictment lacking *any* enumerated predicate acts is constitutionally suspect. *Cf. Russotti*, 717 F.2d at 33 (predicates' times, places and participants, all missing here, largely determine whether RICO conspiracy counts charge distinct patterns for double jeopardy purposes).

This sort of nebulous, open-ended pleading is not what *Salinas* and associated cases had in mind. To the contrary, post-*Salinas* decisions continue to require, or at least assume, that § 1962(d) indictments will allege conventional patterns of racketeering in customary detail. In *Pizzonia*, for example, the Court of Appeals envisioned patterns "pleaded to have 'consisted of' or 'included' *specified* predicate acts." 577 F.2d at 466 (emphasis supplied). In *Yannotti*, the Court observed that "the same predicate acts may be *charged* with respect to both substantive and RICO conspiracy counts." 541 F.3d at 129 n.11 (emphasis supplied). The Court also explained how juries are to evaluate "*charged* predicate acts" in RICO conspiracy cases, and described how they must be

3

"instructed as to predicate acts *charged* in [a] RICO conspiracy." *Id.* (citation omitted) (emphasis supplied). And in *U.S. v. Soto*, the Court similarly underlined the "predicate acts *alleged*" in a § 1962(d) "indictment." 269 Fed. Appx. 22, 24 (2d Cir. 2008) (unpublished) (emphasis supplied). *Accord, e.g., U.S. v. Driver*, 535 F.3d 424, 432-33 (6th Cir.) (reversing RICO conspiracy conviction for insufficient evidence that defendant "agreed to the commission of any other predicate act *alleged in the indictment*") (emphasis supplied), *cert. denied*, 129 S. Ct. 662 (2008); *U.S. v. Carneglia*, No. 08-CR-76, 2009 WL 185727, at *1, *3 (E.D.N.Y. Jan. 27, 2009) (RICO conspiracy count charging 18 specific racketeering acts).

Nothing in these cases purports to abolish the pleading of enumerated predicate acts allegedly agreed to in RICO conspiracy indictments. And if the cases *do* portend such a radical change, we respectfully submit that § 1962(d) is unconstitutionally vague as charged in Count One, further compelling its dismissal. *See, e.g., H.J.*, 492 U.S. at 255-56 (Scalia, J., joined by Rehnquist, C.J., and O'Connor and Kennedy, JJ., concurring in judgment); *Sorich v. U.S.*, 129 S. Ct. 1308 (2009) (Scalia, J., dissenting from *certiorari* denial); M. Fernich, "Money Laundering After *Santos*: A Supreme Mess," 240 N.Y.L.J. 4, col. 3 (Oct. 17, 2008).

When an indictment alleges decades of crime under a provision as expansive as § 1962(d), simply reciting "generic [statutory] terms"[1] – without otherwise identifying the agreed-upon predicate acts – fails to "notify[]" the defendant of the accusation he faces or assure that he is "tried on the matters [the grand jury] considered." *U.S. v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000); *see U.S. v. Urso*, 369 F. Supp. 2d 254, 266 (E.D.N.Y. 2005) (Garaufis, J.) ("the quantum and type of factual specificity required ... varies according to the charges alleged") (citations omitted). In these

---

[1] *Russell v. U.S.*, 369 U.S. 749, 765 (1962) (citation and internal quotes omitted).

4

circumstances, the indictment must "descend to particulars," describing discrete *"criminal act[s] rather than [] type[s] of crime"* so "the prosecution will not fill in elements of its case" with facts never passed on by the grand jury. *Pirro*, 212 F.3d at 92-93 (citations and internal quotes omitted) (emphasis supplied). This especially true in the RICO context, as the Second Circuit cautioned long ago:

> With the wide latitude accorded the prosecution to frame a charge that a defendant has "conspired" to promote the affairs of an "enterprise" through a "pattern of racketeering activity" comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope.

*U.S. v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).

Watts's 30-year RICO conspiracy count confounds this warning and is even sketchier than the *two-year* loan sharking charges dismissed in *Urso*. There, too, the indictment "did nothing more than track the statutory language and make vague allegations as to time and place," *U.S. v. Galestro*, No. 06 CR 285 (ARR), 2008 WL 2783360, at *3 (E.D.N.Y. July 15, 2008), shunning such basics as "victims," coconspirators, "locations" and "dates." *Urso*, 369 F. Supp. 2d at 265. Finding these omissions constitutionally intolerable, Judge Garaufis threw out the charges *for* "fail[ing] to adequately tie the government to the [grand jury] evidence" and preventing the defendant from "anticipat[ing]" the "nature" of the conduct claimed to be unlawful. *Id.* at 265-66.

So it is here, where Watts's exponentially broader indictment is equally devoid of "factual particularity." *U.S. v. Gotti*, No. S4 02 CR 743 (RCC), 2004 WL 32858, at *7 (S.D.N.Y. Jan. 6, 2004) (citation omitted). Indeed, as previously discussed, Count One appears "less specific[]" than any "comparable" RICO conspiracy charge "approved by the Second Circuit," setting forth *"every*

5

critical element" over decades of alleged mob activity in entirely "general terms." *Urso*, 369 F. Supp. 2d at 266-67. Courts in this circuit have "*not* upheld indictments that merely [echoed] statutory language" where, as here, "more specific pleading was necessary ... to prepare [a] defense and [protect] against double jeopardy." *Sira v. Morton*, 380 F.3d 57, 73 (2d Cir. 2004) (citation omitted) (emphasis supplied); *see, e.g., U.S. v. Solovey*, No. 04-CR-244S, 2005 WL 1279228, at *2, *4 (W.D.N.Y. May 31, 2005) (dismissing *year-and-a-half* indictment for failing to identify the "victims allegedly threatened"); *U.S. v. Abrams*, 539 F. Supp. 378, 384-85 (S.D.N.Y. 1982) (dismissing *9-24 month* obstruction of justice counts for failing to state the "essential facts constituting the offenses charged"; counts roughly approximated time and place but provided no other specifics, neither naming witnesses and investigators involved nor detailing "the alleged acts of bribery or misrepresentation") (citation and internal quotes omitted).

In a 30-year racketeering case, Watts should not have to wait until trial to learn "the gist of the charge[]" against him. *Pirro*, 212 F.3d at 93. Count One must be dismissed as impermissibly vague.[2] At a minimum, Watts is entitled to the bill of particulars he has requested from the government (Ex. A),[3] or at least enough information to identify the predicate acts to whose commission he allegedly agreed. *See, e.g., Davidoff*, 845 F.2d at 1154 (reversing seven-year RICO conspiracy conviction for denial of bill of particulars "identifying at least the victims" of unspecified extortion schemes); *U.S. v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987) (reversing RICO

---

[2] In *U.S. v. Boyle*, this Court held that a similarly pled RICO conspiracy count contained "little more" than the minimum "required by law." No. S1 08 CR 534 (CM), 2009 WL 2032105, at *5 (S.D.N.Y. July 9, 2009). Watts's 30-year indictment dwarfs the maximum 18-year charge, dating to the "early 1990s," in that case. *Boyle* indictment ¶ 11.

[3] Exhibits referenced in this memorandum are annexed to Mr. Shargel's moving declaration.

6

convictions for denial of bill of particulars identifying cognate crimes); *Urso*, 369 F. Supp. 2d at 272 (ordering government to amplify "bare-bones" racketeering act by identifying victims, locations and/or coconspirators); *U.S. v. Lino*, No. 00 CR 632 (WHP), 2001 WL 8356, at *8-*9 (S.D.N.Y. Jan. 2, 2001) (Pauley, J.) (ordering extensive particulars amplifying "multi-faceted and wide-ranging" racketeering charges; RICO allegations demand "[h]eightened scrutiny" under *Davidoff* and cases construing "participation element").

## POINT II

### FRUITS OF THE AMERICAN SEARCH MUST BE SUPPRESSED

On March 9, 2009, government agents executed a search warrant at the Manhattan office of American, a business producing energy drinks. Ex. B ¶¶ 5, 9(b). Watts attacks the search on three principal grounds.[4]

**First**, the warrant (Ex. D) was substantially overbroad, vastly exceeding the scope of any probable cause established in the supporting application. This is so for the following reasons:

    A.    The warrant authorized wholesale seizure of all American business records and hardware – every document (paper or computerized) and electronic device in the office – on a supposed showing of fraud (18 U.S.C. §§ 1341, 1343) and money laundering (18 U.S.C. § 1956) violations. *See* Ex. B ¶¶ 2-3, 5, 13-14; Ex. D ("All documents relating to American," "All documents relating to communications," etc.).

---

[4] Watts's accompanying affidavit (Ex. C) demonstrates his reasonable expectation of privacy in the office, and thus his standing to challenge the search. *See, e.g., Mancusi v. DeForte*, 392 U.S. 364 (1968); *U.S. v. Chuang*, 897 F.2d 646, 649-51 (2d Cir. 1990); *U.S. v. Finley*, 477 F.3d 250, 258-59 (5th Cir. 2007); *O'Rourke v. Hayes*, 378 F.3d 1201, 1206-07 (11th Cir. 2004); *U.S. v. Mancini*, 8 F.3d 104, 108-10 (1st Cir. 1993).

B.     To justify such a blanket "all-records" search, *U.S. v. Vilar*, No. S3 05 CR 621 (KMK), 2007 WL 1075041, at *21 (S.D.N.Y. April 4, 2007) (internal quotation marks omitted), the government had to demonstrate that the "entire business" was "pervade[d]," *U.S. Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989), or "permeated with fraud," *Nat'l City Trading Corp. v. U.S.*, 635 F.2d 1020, 1026 (2d Cir. 1980). *See, e.g., U.S. v. Markey*, 131 F. Supp. 2d 316, 326 (D. Conn. 2001) ("all-records" search appropriate upon probable cause that "entire business operation was illegal"); *U.S. v. Paccione*, 738 F. Supp. 691, 708 (S.D.N.Y. 1990) (same where "business is totally illegal").

C.     Agent LaManna's supporting affidavit fell "far short" of this heavy burden. *Vilar*, 2007 WL 1075041, at *21. At most, it alleged only a single arguably fraudulent transaction, paired with some suspected money laundering and plenty of "legitimate business activit[y]." *Id.* (application identifying "only two victims" does not show "rampant misconduct" allowing all-records search).

D.     More specifically, the affidavit alleged as follows:

1.     **Putative Fraud** – Bio-Botanica ("BB") is a company that makes "botanical extracts for products such as energy drinks." Ex. B ¶ 5. According to two unnamed executives at the company,[5] American, acting through Watts under the alias Joseph Russo, ordered a large quantity of "energy shots" from BB but failed to pay a $45,000 balance. *Id.* ¶¶ 5, 9(a), 9(c),

---

[5]     Because the affidavit was wholly silent as to the executives' reliability and basis of knowledge, their "uncertain and uncorroborated hearsay allegation[s] [were] insufficient to establish probable cause." *Vilar*, 2007 WL 1075041, at *20 (citation omitted). One obvious question is whether the executives were legitimate businesspeople or common criminals currying government favor. This is especially true given the curious assertion that "Executive 1 asked Vincent Russo," a reputed American employee, about the "source" of the company's "funding" – an odd question for a legitimate businessperson to pose. Ex. B ¶ 9(b).

8

11(a). BB "would not have done business with American," the executives said, had it known Watts's role. *Id.* ¶ 9(b).

Even assuming their truth, these allegations do not "describe fraudulent conduct," *U.S. v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993), either singly or jointly. It is "hornbook law" that a routine commercial dispute or purported breach of contract – the unpaid $45,000 – does not rise to a federal mail or wire fraud violation without "an intent at the time of contracting not to perform," *Puckett v. U.S.*, 129 S. Ct. 1423, 1429 n.1 (2009), or contemplated harm to the victim, *U.S. v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006). *See, e.g., U.S. v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) (breach of contract alone not mail fraud). Yet these "critical" assertions, *U.S. v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987), were starkly absent from LaManna's affidavit. If anything, Watts's intervening arrest in Feb. 2009 – buttressed by (a) American's expressed cash crunch while awaiting money from distributors, and (b) its March 2009 email soliciting "continuing business" from BB – points to the opposite conclusion: lack of scienter and an eventual intent to pay. Ex. B ¶¶ 5, 9(c), 12.

Equally fundamental is that a deprivation of the right to control spending – the claim that BB would not have done business with American had it known of Watts's involvement – is not a cognizable property interest under the federal fraud statutes. *See, e.g., U.S. v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994); *Starr*, 816 F.2d 94; *U.S. v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970). And even if this particular transaction *was* fraudulent, Agent LaManna freely admitted that (a) American dealt with "other companies" and "entities" as to which there was no suggestion of impropriety, (b) the firm "d[id] conduct some business," and (c) its "product ha[d] been seen in ... stores." Ex. B ¶¶ 5, 9, 13 (money going "in[] and out"; "product" purchased, stored and "shipped" to "wholesale customers"). One supposedly questionable transaction – really just an outstanding bill

– does not give the government carte blanche to haul away every scrap of paper and byte of electronic data in a corporate office. *See, e.g., Vilar*, 2007 WL 1075041, at *20-*21, *34 (granting partial suppression where, as here, government did not "contest" that "some portion" of business was "managed lawfully"); *U.S. v. Hickey*, 16 F. Supp. 2d 223, 238-41, 243-45 (E.D.N.Y. 1998) (similar; "Fourth Amendment requires more than mere extrapolation to activate" all-records "principle," otherwise it would be "difficult to envision a warrant" offending particularity rule); *cf. Roberts v. U.S.*, 656 F. Supp. 929, 936 (S.D.N.Y.) (to invoke all-records doctrine, target enterprise must have "conduct[ed] no legitimate activities at all," with "every action" at "every stage" of operation designed solely to further "fraudulent objectives"), *rearg. denied*, 652 F. Supp. 108 (S.D.N.Y. 1987), *rev'd on other grounds*, 852 F.2d 671 (2d Cir. 1988).

      2.    **Putative Money Laundering** – By its terms, the LaManna affidavit alleged only that American was formed "in *part* to launder funds derived from Gambino-related business." Ex. B ¶ 5 (emphasis supplied); *see also, e.g., id.* ¶ 13 ("*one*" of American's "purposes" was to "launder money derived from prior criminal schemes") (emphasis supplied). Even if backed by probable cause – a doubtful proposition[6] – this contention too is a far cry from the total illegality essential to an all-records search. *Cf., e.g., Nat'l City Trading Corp.*, 635 F.2d at 1021-22 (40 complaints about enterprise, 20 investigated); *U.S. v. Oloyede*, 982 F.2d 133, 140 (4th Cir. 1992) (50 documented cases, 26 fraudulent files); *U.S. v. Brien*, 617 F.2d 299, 307 (1st Cir. 1980) (250 complaints, 20 ex-employee interviews).

---

      6    For example, the affidavit did not establish that any anterior crimes – chiefly an alleged scam involving prepaid telephone cards, Ex. B ¶¶ 6, 9(b) – generated net profits rather than gross receipts. *See U.S. v. Santos*, 128 S. Ct. 2020 (2008).

10

**Second**, even assuming probable cause for an all-records search, the warrant was drastically overbroad on its face. Most prominently, it failed to indicate the crimes under investigation[7] and included general, catch-all paragraphs authorizing seizure of a "virtually unlimited body of documents," *Vilar*, 2007 WL 1075041, at *23 – all paper and electronic records "that could conceivably be found in an office." *Roberts*, 656 F. Supp. at 934; *see* Ex. D. As a result, the executing agents were "endowed" with "untamed discretion," *Roberts*, 656 F. Supp. at 937, to conduct an "abhorrent" exploratory search. *Coolidge v. N.H.*, 403 U.S. 443, 467 (1971). Indeed, the government fairly flaunted this purpose, confessing that it was fishing for records of "customer[]" identities, shipment and storage locations – ordinary "business" information of no obvious investigatory concern – and even their absence or "limited number." Ex. B ¶ 13; *contra, e.g., Vilar*, 2007 WL 1075041, at *21-*23, *34; *Hickey*, 16 F. Supp. 2d at 238-44; *U.S. v. Gigante*, 979 F. Supp. 959, 965-67 (S.D.N.Y. 1997); *Roberts*, 656 F. Supp. at 934-37 (all granting total or partial suppression for similarly overbroad warrants); *U.S. v. Hunter*, 13 F. Supp. 2d 574, 584 (D. Vt. 1998) (voiding warrant's "catch-all" computer provision as "insufficiently particularized").[8]

**Third**, the digital search procedure outlined in the warrant application – letting the government seize all American "computer equipment and storage devices" and browse their entire "contents," Ex. B ¶ 18 – does not comply with the protocol prescribed in *U.S. v. Comprehensive*

---

[7] No crimes are mentioned within the warrant's four corners, and the supporting affidavit does not appear to have been physically attached or formally incorporated by reference. *Contra, e.g., Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004); *U.S. v. Cohan*, 628 F. Supp. 2d 355, 362-63 (E.D.N.Y. 2009).

[8] Because the warrant was facially overbroad, the good faith exception to the exclusionary rule, *see U.S. v. Leon*, 468 U.S. 897 (1984), does not apply. *See, e.g., Vilar*, 2007 WL1075041, at *23-24; *Hickey*, 16 F. Supp. 2d at 244.

11

*Drug Testing, Inc.*, including (A) waiver of the plan view doctrine; (B) shielding case agents from data not strictly targeted by the warrant; (C) disclosing the true risks, if any, of evidence destruction; and (D) narrowly tailoring the search to uncover only information supported by probable cause. 579 F.3d 989, 1006-07 (9th Cir. 2009); *see also, e.g, U.S. v. Graziano*, 558 F. Supp.2d 304, 316 (E.D.N.Y. 2008) (government must "particularize" items sought so as not to turn every computer search "into a general search"); *Vilar*, 2007 WL 1075041, at *37 (government must delineate search limits so warrant does not become "blank check" to "scour" computer for proof of different crimes).

Because the government subjected American to a textbook "all-records" search without probable cause for one, all resulting evidence – direct and derivative – must be suppressed.

## CONCLUSION

Watts's second set of pretrial motions should be granted in full.

Dated:    New York, New York
          Oct. 23, 2009

                                    Respectfully submitted,

                                    **LAW OFFICES OF GERALD SHARGEL**

                        BY:    *Gerald Shargel* /KMK
                               GERALD L. SHARGEL, ESQ.
                               570 Lexington Ave. Fl. 45
                               New York, NY 10012
                               (212) 446-2323
                               gshargel@shargellaw.com

                               **MARC FERNICH, ESQ.**
                               **LAW OFFICE OF MARC FERNICH**
                               152 W. 57th St. Fl. 24
                               New York, NY 10019
                               (212) 446-2346

12

maf@fernichlaw.com

**JOEL WINOGRAD, ESQ.**
**WINOGRAD & WINOGRAD, P.C.**
450 Seventh Ave. Fl. 13
New York, NY 10123
(212) 268-6900
joelwinograd@gmail.com

*Attorneys for Joseph Watts*

On the Memorandum:

    Marc Fernich